David S. Casey, Jr., SBN 060768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
Jeremy Robinson, SBN 188325
*jrobinson@cglaw.com*
P. Camille Guerra, SBN 326546
*camille@cglaw.com*
Michael J. Morphew, SBN 304463
*mmorphew@cglaw.com*
**CASEY GERRY SCHENK FRANCAVILLA
 BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA  92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODRIGO NIETO GOMEZ, individually, and on behalf of all others similarly situated, <br><br>         Plaintiff, <br><br> v. <br><br> FCA US LLC, <br><br>         Defendant. | Case No. 3:22-cv-2171 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Rodrigo Nieto Gomez, ("Plaintiff"), for himself and on behalf of all others similarly situated, brings this action against FCA US LLC ("FCA" or "Defendant"). Plaintiff alleges the following based on personal knowledge as to his own acts, information and belief, and on the investigation conducted by his counsel as to all other allegations:

## I.    NATURE OF THE ACTION

1.    FCA advertises its Chrysler Pacifica minivans as "designed to help keep your family safe."[1] In reality, the 2017 and 2018 Plug-In Hybrid Vehicles ("PHEVs") have a serious risk of exploding and erupting in flames, posing a grave threat of both severe property damage and physical harm, or even death, to drivers and passengers, prompting FCA to issue Recall No. 22V-077 ("Recall") on February 11, 2022.[2]

2.    In the course of normal use, Class Vehicles may erupt in flames, causing an explosion (the "Defect"). The risk of fire is present regardless of whether the ignition is turned on or off. The Defect is inherent in each of the Class Vehicles and was present at the time of sale.

3.    The fires in the vehicles mentioned herein—model years 2017 through 2018 Chrysler Pacifica Plug-In Hybrid minivans (the "Class Vehicles")—potentially originate in the center of the vehicle underbody with the ignition in "OFF" mode.[3]  However, FCA admits that the "defect has not yet been identified and the root cause of these fires is still being investigated."[4]  Further, FCA advises "owners of these hybrid vehicles to refrain from recharging them, and to park them away from structures and other vehicles." [5]

4.    Vehicle fires are unfortunately an ongoing threat to consumer safety and property. In 2018, alone, there were 1,300 injuries and 490 deaths stemming from

---

[1] https://www.chrysler.com/pacifica/safety-security.html

[2] Although FCA issued a Recall, there is no current fix for the Defect.  Plaintiff and Class Members do not have use of their Class Vehicles as bargained for at point of sale.

[3] Exhibit A: FCA New Safety Recall Advanced Communication – Z11 dated Feb. 18, 2022

[4] NHTSA Part 573 Safety Recall Report 22V-077, submitted Feb. 11, 2022

[5] *Id.*

highway vehicle fires.[6] Despite this sobering data, FCA sold and leased approximately 16,741 Class Vehicles with the defect that can add to the number of injuries and deaths resulting from vehicle fires.[7]

5.    This is not FCA's first recall involving the potential for the Class Vehicles to catch fire.  In 2020, internal investigations by FCA confirmed the risk of fires in Class Vehicles.  At that time, FCA reported a "trend in interior fires" and injuries caused by them.[8]

6.    At that time, on June 10, 2020, FCA announced that it was recalling over 27,000 Pacifica plug-in hybrid minivans due to the risk of fire related to high resistance electrical connection due to inadvertent liquid intrusion to its 12-volt battery isolator post located near the back seat. Vehicle owners were advised not to park their vehicles inside of buildings or structures, or near other vehicles, and to keep all liquids out of the backseat area.  FCA repaired the vehicles by installing a gasket on the 12-volt isolator post.  FCA also inspected the isolator post connection joint, and if necessary, replaced the isolator post and the 12-volt cables.[9] But this did not fix the fire risk and the vehicles are still at risk for catching fire or exploding.

7.    FCA is well experienced in the design and manufacture of vehicles. As an experienced vehicle manufacturer, FCA conducts quality control and pre-sale testing to ensure that its vehicles are free from defect and align with its specifications. As such, FCA knew or should have known that the Class Vehicles were plagued by the current Defect and presented serious safety risks.

8.    Plaintiff and Class Members purchased or leased vehicles that, at the time of purchase or lease, were of a lesser standard and quality than represented and were not fit for the ordinary purpose of providing safe transportation. Plaintiff and Class Members

---

[6] https://injuryfacts.nsc.org/home-and-community/safety-topics/fire-related-fatalities-and-injuries/

[7] NHTSA Part 573 Safety Recall Report 22V-077, submitted Feb. 11, 2022

[8] NHTSA Recall No. 20V-334, available at https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V334-4729.PDF

[9] *Id.*

would have paid less for their vehicles had they known of the Defect. Plaintiff and Class Members have suffered damages in that they lost the benefit of their bargain, overpaid for the Class Vehicles, suffered diminution in value of the Class Vehicles, loss of use of the Class Vehicles, as well as incurred out of pocket expenses related to loss of use of the affected vehicles.

## II.  PARTIES

9.  **Plaintiff Rodrigo Nieto Gomez** is a resident of Prunedale, California, in Monterey County. Nieto Gomez purchased a new 2018 Chrysler Pacifica plug-in hybrid on or around June 17, 2019. The value of Nieto Gomez's Class Vehicle has been diminished as a result of the Defect. Since learning about the Defect, Nieto Gomez paid an electrician to move the charger approximately 80 feet away from his house, installed a smoke detector next to the charger and routinely searches online for updates about the Recall. If Nieto Gomez had known about the Defect, he would not have purchased the Class Vehicle or would not have paid as much for it.

10.  **Defendant FCA US LLC** is a Delaware limited liability company, with its corporate headquarters located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. FCA designs, engineers, manufactures, markets and/or sells vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands with the knowledge and intent to market, sell, and lease them throughout the United States. FCA also developed and distributed the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials relating to the Class Vehicles, with the intent that such documents should be distributed throughout the United States. FCA engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

## III.  JURISDICTION AND VENUE

11.  This court has jurisdiction over Plaintiff's and the Class Members' claims pursuant to 28 U.S.C. § 1332(a) because: (a) the proposed Class Members are citizens of a

state diverse from Defendant's citizenship; and (b) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

13.    This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965(d) because it is registered to transact business in the State of California and transacts business in this District.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Class Vehicle Recall

15.    On February 11, 2022, FCA issued Recall No. 22V-077 for 16,741 Class Vehicles, stating that some of the Class Vehicles "have experienced fires." The defect has not yet been identified and the root cause of the fires is still being investigated."[10]

16.    The Recall includes a "Description of the Defect and Safety Risk" which notes that a "vehicle may experience a fire, even with the ignition in the "OFF" mode.  A vehicle fire can result in increased risk of occupant injury and/or injury to persons outside the vehicle, as well as property damage." [11]

17.    The following Chronology was provided by FCA as part of the Recall.

---

[10] NHTSA Part 573 Safety Recall Report 22V-077, submitted Feb. 11, 2022
[11] *Id.*

- On August 31, 2021, the FCA US LLC ("FCA US") Technical Safety and Regulatory Compliance organization opened an investigation as a result of detecting a potential trend in fires in certain Chrysler Pacifica PHEVs.

- From September 2021, to January 2022, FCA US repurchased two vehicles for origin and cause investigation.  The cause of these fires is under investigation.

- As of February 4, 2022, FCA USA is aware of ten additional fires.  The cause of these fires is under investigation.

- As of February 4, 2022, FCA US has identified five customer records, zero warranty claims, and 12 field reports potentially relating to this issue for all markets with dates of receipt ranging from April 23, 2019, to December 14, 2021.

- As of February 4, 2022, FCA is not aware of any accidents or injuries potentially relating to this issue for all markets.

- On February 6, 2022, FCA US determined, through the Vehicle Regulations Committee, to conduct a voluntary safety recall of the affected vehicles.[12]

18.    Despite knowing the serious risk for potential injury to individuals and property damage, FCA has not offered to provide loaner vehicles to Plaintiff or Class Members in conjunction with the recall.

19.    Instead, FCA states it does not have a remedy for this defect, and "[u]ntil further notice, the Company is advising owners of these hybrid vehicles to refrain from recharging them, and to park them away from structures and other vehicles."[13]

20.    The inconvenience suffered by Plaintiff and Class Members cannot be overstated. They are now forced to effectively isolate their Class Vehicles from structures and other vehicles.  They can no longer safely charge their Class Vehicles in their garage or next to their house or park them near structures or other vehicles.  As a result, they live

---

[12] *Id.*

[13] *Id.*

with the fear of fires erupting in their Class Vehicle, potentially causing injury to individuals and damage to property.

**B.    Consumer Complaints Reveal the Seriousness of the Defect**

21.    Consumers have posted harrowing experiences involving Pacifica plug-in hybrid fires in an online forum dedicated to discussions relating to that vehicle. FCA responded directly to these consumers, all of whom lost their vehicles to fires, and one of whom lost their house.

22.    By way of example "pacificafire" posted a description on May 10, 2019, of a fire originating in the owner's 2017 Pacifica Hybrid:

> Hello,
>
> Just feel obligated to share the story, hoping to save someone from what we went through or worse.
>
> What you see on the picture happened 2 weeks ago (was busy trying to talk to Chrysler and Insurance so I haven't posted right away) at night. Car was charged and sitting on my driveway. We woke up from things blowing up. When I looked out of the window the flames were the height of the 2-story house.
>
> 4 kids, myself and my wife escaped through the backyard door, took firefighters 1 hour to put the fire down.
>
> I was trying to install the charger inside of the garage but luckily couldn't fit the car easily. I used Chargepoint charger and it has nothing to do with the charger, obviously an issue with the car. I had this car for just over a year, no accidents, maintained at a Chrysler dealership.
>
> Spoke to Chrysler, they said that they are sorry to hear about it but are not interested in anything else. No investigation, nothing. That amazes me as much as the car made for families blowing up on its own.
>
> Not sure if I can add much more to this story but I am happy to answer any questions.[14]

---

[14] https://www.pacificaforums.com/threads/pacifica-hybrid-burnt-to-the-ground.43185/



23.     Using the moniker "ChryslerCares," FCA responded to "pacificafire" on the same day and requested additional information about the incident:

> Hi pacificafire,
>
> We are truly sorry to hear about this! We're very glad that your family is safe. We would like to take the time to look into this further and gather some additional information from you if you would please send us a private message with your VIN.
>
> Lydia
> Chrysler Social Care Specialist[15]

24.     One month later, in June 2019, another individual described a fire "almost identical to the incident described by pacificafire" involving his 2018 Pacifica plug-in hybrid:

> We've had a Pacifica Limited PHEV since August 2018, and have been very happy with it (borderline evangelistic, in fact) up until this morning. At 7am, we heard a loud explosion and ran downstairs to

---

[15] *Id.*

7

discover the car burning. We called the fire department, and they were there in 5-6 minutes, but in that time the vehicle gas tank ruptured was the car was completely engulfed in flames.

The vehicle had been plugged into a standard 110V outlet overnight (actually, around 16 hours) using the manufacturer's provided charging cable. We hadn't driven it since the afternoon before. So it was fully charged at the time.

A neighbor's web cam caught the explosion. The vehicle was emitting a large amount of smoke prior to the explosion.

Thankfully, everyone got out of the house and the only serious damage was to the vehicle, the driveway, and the nearby plants. If it had been in the garage, it would've been a different story (we would've lost the house for sure).

Since this is two incidents in as many months (this one is almost identical to the incident described by pacificafire), I wanted to alert as many owners as possible. Please don't shoot the messenger (I'm still a fan of hybrids, but a bit in shock at the moment).

I also want to emphasize that we know almost nothing about the cause at this point, other than it doesn't appear to be arson. The only thing I think that can be ruled out is the recall issue, since the engine was completely cold (and had been -- yesterday was an all-electric day).

I'll post things as I find out more facts, but any cause at this point is speculation.[16]

25.     The individual included the following pictures of the Chrysler Pacifica engulfed in flames, as well as the aftermath:



---

[16] https://www.pacificaforums.com/threads/a-second-pacifica-phev-fire.43545/#post-563953



26.     FCA directly responded to this post two days later, stating that it wished to have the incident "documented" and connect him with a case specialist for further handling:

> Hi Bsmith,
>
> We deeply regret to see that you have experienced this. We are glad to hear that everyone is safe. We would like to ensure that this is documented as well as get you connected with a case specialist for further handling. Please send our team a private message!
>
> Alex
> Chrysler Social Care Specialist[17]

27.     Yet another individual posted a similarly devastating experience in September 2019 involving a 2018 Pacifica plug-in hybrid. The individual's house was destroyed a result:

> Last week, my family was awoken in the middle of the night by an incredibly large boom - my wife thought our house had taken a direct hit from lightning. I ran to find the cause, looking into my garage to see my 2018 hybrid completely engulfed in what I could only describe as an inferno. After my family evacuated safely, we noted that our garage door had been blown out to the end of our driveway. Apparently what we heard was quite a powerful explosion in the garage.
>
> The van had been plugged into a 40A JuiceBox, which itself was plugged into a 14-50 NEMA receptacle. It had begun charging around 7:30ish, which means the vehicle had been fully charged for at least 7 hours when the explosion happened shortly after 5AM.

---

[17] *Id.*

Initial, unofficial assessment from a certified fire investigator indicate that the fire began on the side of our garage where the Pacifica was parked, about halfway back into the garage (near both the JuiceBox and the middle of the vehicle). The evidence indicates that the fire did not start under the hood, though I'm not sure if we have enough info to tell if it could have started somehow at the charging port?

The fire burned incredibly hot, incredibly fast. It warped siding on the house across the street. The fire started in the garage before moving up into the attic above and then throughout the whole roof. After more than an hour of firefighting, the entire roof of our house was destroyed and the house is essentially a total loss.

After seeing previous posts regarding similar fires that fortunately happened in driveways, I'm concerned about what appears to be a growing pattern. Who's to say whether the next fire might happen in a house with bedrooms above the garage? We have not contacted Chrysler, though I'm told by the fire investigator that he is notifying them shortly.

Picture below is of the aftermath. Pacifica is the left car in the garage.



[18]

---

[18]https://www.pacificaforums.com/threads/house-fire-hybrid-18-pacifica-strongly-indicated-as-cause.44532/

## C.    FCA's Misrepresentations and Omissions

### a.  FCA Marketed the Class Vehicles as Safe

28.    FCA is experienced in the design and manufacture of vehicles. As an experienced vehicle manufacturer, FCA conducts quality control and pre-sale testing on its vehicles to verify that they are free from defect and align with its specifications. Accordingly, FCA knew or should have known that the Class Vehicles were unsafe and contained a defect that could lead to explosions and fires. Yet FCA has consistently marketed the Class Vehicles as safe and secure:





[19]

---

[19] 2017 Chrysler Pacifica brochure

Long and winding roads reveal panoramic views within the purposefully planned, kid-friendly road-trip vehicle. Your travels will inspire while ensuring the well-being of all your beings with over 100 standard and available safety and security features. The available seating for eight offers plenty of elbow room, as well as your turn to relax, needing only to focus on the road ahead. The ergonomic advantages of Pacifica make it easy to count on a peaceful trip.[20]

### b. FCA Misrepresented the Class Vehicles as Safe in Labeling Required Under Federal Law

29.     To sell vehicles in the United States, FCA must "certify to the distributor or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety standards prescribed" by NHTSA under Chapter 301 of Title 49 of the U.S. Code. Pursuant to Chapter 301, FCA "may not issue the certificate if, in exercising reasonable care," it has "reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115; *see also* 49 U.S.C. § 30112. That safety certificate must be in a label permanently fixed to the vehicle, and thus all Class Vehicles have permanent labels that certify compliance with the safety regulations prescribed by NHTSA under Chapter 301.

30.     Consumers reasonably relied on the safety assurances in the federally mandated labels. Those labels reasonably led Class Vehicle owners and lessees to believe that the Class Vehicles were safe and reliable, when, in reality, they were not.

31.     Had Plaintiff and Class Members known the truth about the risk of explosion and fire present in the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for the Class Vehicles.

---

[20] 2018 Chrysler Pacifica brochure

### c.  Plaintiff's Experience

*Rodrigo Nieto Gomez*

32.    On or around June 17, 2019, Plaintiff Rodrigo Nieto Gomez purchased a new 2018 Chrysler Pacifica plug-in hybrid from Seaside Chrysler Dodge Jeep Ram, in Seaside, California.

33.    Nieto Gomez purchased the Class Vehicle primarily for personal, family, or household use. FCA manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

34.    Since learning of the Defect, Nieto Gomez has been highly concerned about the threat of harm the vehicle poses to his family, himself, and his property.

35.    As a result of his concerns about the safety threat the vehicle poses, Nieto Gomez has had to park his vehicle outside and away from other vehicles. Nieto Gomez also paid an electrician to move and reinstall the charger approximately 80 feet from his house.  He also installed a smoke detector next to the charger.

36.    Nieto Gomez has suffered a concrete injury as a result of FCA's misconduct and did not receive the full benefit of the bargain in acquiring the vehicle.

37.    As of the date of the filing of this Complaint, FCA has not offered any remedy to fix the Defect.

38.    Had Nieto Gomez known of the Defect, he would not have purchased the vehicle at all or would have paid substantially less for it.

## V.    CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action individually and on behalf of a Nationwide Class and a California Subclass pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3).

40.    The Nationwide Class is defined as follows:

"All persons in the United States who purchased or leased a Class Vehicle for personal use and not for resale."

41.    The California Subclass is defined as follows:

"All persons in the State of California who purchased or leased a Class Vehicle for personal use and not for resale."

42.     Excluded from the proposed Classes are: FCA, any entity in which FCA has a controlling interest, is a parent or subsidiary, or which is controlled by FCA, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of FCA, and judicial officers to whom this case is assigned and their immediate family members.

43.     Certification of Plaintiff's claims for class-wide treatment are appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     Plaintiff reserves the right to re-define the Class definition after conducting discovery.

45.     **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in FCA's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

46.     **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a.  Whether the Class Vehicles contained the Defect;

b.  Whether FCA engaged in unfair, unlawful, and/or deceptive business practices in selling and leasing to consumers Class Vehicles that are affected by the Defect;

c.  Whether FCA breached the implied warranty of merchantability relating to the defective nature of the Class Vehicles;

14

d.  Whether the Class Vehicles have suffered a diminution of value as a result of the Defect;

e.  Whether FCA was unjustly enriched by receiving monies in exchange for the defective Class Vehicles;

f.  Whether FCA should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Class Vehicles;

g.  Whether FCA acted willfully and in wanton disregard of the consequences of its actions to consumers;

h.  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; and

i.  Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction enjoining FCA from engaging in the wrongful and unlawful conduct alleged herein.

47.  **Typicality:** Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed and manufactured by FCA that is defective. The representative Plaintiff, like all Class Members, has been damaged by FCA's misconduct in that he possesses a vehicle that is unsafe and unfit for its intended purpose, has overpaid for the Class Vehicle, and has suffered or will suffer damages due to the diminished value of the Class Vehicle caused by the Defect. Furthermore, the factual bases of FCA's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class as a whole.

48.  **Adequacy of Representation:**  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class Members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. As such, the Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

49.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against FCA, making it impracticable for Class Members to individually seek redress for FCA's wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I

**Breach of Implied Warranty Under the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2303 *et seq.***
**(On behalf of the Nationwide Class)**

50.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

51.     Plaintiff brings this count individually and on behalf of all Class Members.

52.     The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

53.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3)

54.     FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

55.     FCA provided all purchasers and lessees of the Class Vehicles with implied warranties.

16

56.     FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. The implied warranty included, among other things: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by FCA were safe and reliable vehicles for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

57.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are inherently defective and dangerous in that the Class Vehicles may erupt in flames and explode.

58.     FCA's breach of implied warranties has deprived Plaintiff and Class Members of the benefit of their bargain.

59.     Plaintiff and Class Members have had sufficient direct dealings with either FCA or its agents (dealerships and technical support) to establish privity of contract between FCA, on one hand, and Plaintiff and each of the other Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

60.     The amount in controversy of the individual claims of each Plaintiff and Class Member meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

61.     FCA has been afforded a reasonable opportunity to cure its breach, by providing alternative vehicles to Plaintiff and Class members until FCA fixes the Defect.

62.     Additionally, pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give FCA notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

63.     As a direct and proximate cause of FCA's breach of express and implied warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial. FCA's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

64.     As a result of FCA's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff and Class Members have incurred damages.

## COUNT II

### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of the California Subclass)

65.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

66.     Plaintiff brings this count individually and on behalf of the California Subclass.

67.     California's Unfair Competition Law ("UCL"), California Business and Professions Code §17200, et seq., prohibits any "unlawful, unfair or fraudulent business act or practices."

68.     In the course of its business, FCA violated the UCL by engaging in the following unlawful and unfair business acts and practices:

a.      selling and leasing a Class Vehicle with a defect that renders the vehicle unsafe and unfit for normal use;

b.      breaching California statutory and common law implied warranties associated with the Class Vehicles;

18

c.      failing to adequately fix, repair, or otherwise remediate the Defect in the

Class Vehicles;

69.     Had Plaintiff and the members of the Class known of the Defect, they would

not have purchased or leased the Class Vehicles or would have paid significantly less for

them.

70.     Plaintiff and the members of the Class suffered an ascertainable loss of

money and property a direct and proximate result of FCA's violations of the UCL set

forth above.

71.     Pursuant to Cal. Bus. & Prof. Code § 17200, et seq., Plaintiff and the

members of the Class seek any such orders or judgments as may be necessary to restore to

Plaintiff and members of the Class any money acquired by unfair competition, including

restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code

§ 17203, and any other just and proper relief available under the UCL.

72.     Further, Plaintiff and the Class members request injunctive relief to remedy

the violations of the UCL by Defendant FCA, including a full repair of the Defect and

replacement of all necessary parts, an extension of the warranties for the Class Vehicles so

that all repairs and parts replacements related to the Defect are covered by such warranties

and do not result in out-of-pocket costs to Plaintiff and the Class Members, the provision

of loaner vehicles while the work to correct the Defect is being performed, and all other

applicable relief.

73.     Plaintiff and the members of the Class currently lack an adequate remedy at

law for all the harms caused by the Defect. Only through injunctive and restitutionary

relief will Plaintiff and the members of the Class be able to obtain a complete repair of the

defect and an extension of FCA's warranties to cover that work, as well as restitution of

the monies Plaintiff and the members of the Class have already spent in efforts to: repair

the Class Vehicles, find alternative modes of transportation, move their charging

components away from structures, prevent future fires and explosions, and repair or

replace items damaged by the Defect.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III

### Unjust Enrichment or Quasi-Contract
### (On Behalf of the Nationwide Class)

74.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

75.   Plaintiff brings this count individually and on behalf of all members of the Class.

76.   FCA has received and retained a benefit from Plaintiff and members of the Class and inequity has resulted.

77.   FCA benefitted through its unjust conduct by selling and leasing Class Vehicles with the Defect at a profit for more than the Class Vehicles were worth to Plaintiff and members of the Class, who overpaid for these Class Vehicles with the Defect, and/or would not have purchased or leased Class Vehicles at all, and who have been forced to pay other costs.

78.   It is inequitable for FCA to retain these benefits.

79.   Plaintiff and members of the Class do not have an adequate remedy at law.

80.   As a result of FCA's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT IV

### Breach of Implied Warranty
### (On Behalf of the Nationwide Class)

81.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

82.   Plaintiff brings this count individually and on behalf of all members of the Class.

83.   FCA is and was at all relevant times a merchant with respect to vehicles and a seller of vehicles.

84.     The Class Vehicles are and were at all relevant times goods under the Uniform Commercial Code and individual state commercial codes.

85.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law. In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law.

86.     FCA knew at the time of sale of the Class Vehicles that Plaintiff and the members of the Classes intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the members of the Class were relying on FCA's skill and judgment to furnish suitable products for this particular purpose.

87.     The Class Vehicles were and are not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of the Defect, as detailed above. Specifically, they are inherently defective and dangerous in that the Class Vehicles erupt in flames and explode. This Defect renders the Class Vehicles unsafe and significantly reduces their value.

88.     As a direct and proximate result of FCA's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

**COUNT V**

**Violation of the Song-Beverly Consumer Warranty Act
for Breach of Implied Warranties
Cal. Civ. Code §§ 1791.1 and 1792
(On Behalf of the California Subclass)**

89.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

90.     Plaintiff brings this count individually and on behalf of all members of the California Subclass.

91.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

21

92.    FCA is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

93.    FCA impliedly warranted to Plaintiff and the Class Members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. However, the Class Vehicles do not have the quality that a buyer would reasonably expect.

94.    Cal. Civ. Code §1791.1(a) states: "'Implied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following:

(a)    Pass without objection in the trade under the contract description.

(b)    Are fit for the ordinary purposes for which such goods are used.

(c)    Are adequately contained, packaged, and labeled.

(d)    Conform to the promises or affirmations of fact made on the container or label."

95.    The Class Vehicles would not pass without objection in the trade of recreational vehicle sales because they are equipped with a defect that may cause the Class Vehicles to erupt into flames and explode. The Defect renders the Class Vehicles unsafe, and thus, not fit for ordinary purposes.

96.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the Defect.

97.    FCA breached the implied warranty of merchantability by selling and leasing Class Vehicles equipped with the Defect. Furthermore, the Defect has prevented Plaintiff and the Class Members from receiving the benefit of their bargain and has caused the Class Vehicles to greatly diminish in value.

98.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the members of the Class received goods with a dangerous condition that substantially impairs their value.

99.    Plaintiff and the Class Members have been damaged as a result of the diminished value of FCA's products.

100.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and the Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

101.    Under Cal. Civ. Code § 1794, Plaintiff and the Class Members are entitled to costs and attorneys' fees.

**COUNT VI**

**Violation of California Business & Professions Code Sections 17500, *et seq.* – False Advertising Law**
**(On Behalf of the California Subclass)**

102.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

103.    Plaintiff brings this count individually and on behalf of all members of the California Subclass.

104.    Plaintiff, California Subclass members, and FCA are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

105.    California False Advertising Law ("California FAL") prohibits false advertising.  California Bus. & Prof. Code § 17500.

106.    Defendant, in the course of their business, through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles.

107.    Defendant engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500 by misrepresenting the Class Vehicles as being safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles.

108.   Defendant made or caused to be made and disseminated throughout California advertising, marketing, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the California Subclass.  Examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

109.   Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppression of material facts, had a tendency and capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the California Subclass, about the true safety and reliability of Class Vehicles, the quality of Defendant's brands, and the true value of the Class Vehicles.

110.   Defendant's scheme and concealment of the Defect and true characteristics of the Class Vehicles were material to Plaintiff and the California Subclass, as Defendant intended.  Had Plaintiff and the California Subclass known the truth, they would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

111.   Plaintiff and the California Subclass relied on Defendant and had no way of discerning that those representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.  Plaintiff and the California Subclass did not, and could not, unravel Defendant's deception on their own.

112.   Defendant had an ongoing duty to Plaintiff and the California Subclass to refrain from unfair or deceptive practices under the California FAL in the course of their business.  Defendant owed Plaintiff and the California Subclass a duty to disclose all the material facts concerning the Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Defect from Plaintiff and the California Subclass, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

113.    Plaintiff and the California Subclass suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

114.    Defendant's violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

115.    Plaintiff and the California Subclass seek an order enjoining Defendant's false advertising, any such orders or judgments as may be necessary to restore Plaintiff and the California Subclass any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

## COUNT VII

### Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)
### (On Behalf of the California Subclass)

116.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

117.    Plaintiff brings this count individually and on behalf of all members of the California Subclass.

118.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

119.    Plaintiff, California Subclass members and Defendant are "persons" within the meaning of Cal. Civ. Code § 1761(c).

120.    Plaintiff and the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

121.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

122.   Defendant, in the course of their business, through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts relating to the reliability, safety, and performance of the Class Vehicles, as detailed above.

123.   Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a) by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles:

- Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have.
- Representing that the Class Vehicles are of a particular standard, quality and grade when they are not.
- Advertising the Class Vehicles with the intent not to sell or lease them as advertised.
- Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.
- Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

124.   Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the California Subclass, and about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

125.   Defendant's scheme and concealment of the Defect and true characteristics of the Class Vehicles were material to Plaintiff and the California Subclass, as Defendant intended.  Had Plaintiffs and the California Subclass known the truth, they would not have purchased or leased their Class Vehicles or would have paid significantly less for them.

26

126.   Plaintiff and the California Subclass had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.  Plaintiff and the California Subclass did not, and could not, unravel Defendant's deception on their own.

127.   Defendant had an ongoing duty to Plaintiff and the California Subclass to refrain from unfair or deceptive practices under the CLRA in the course of their business. Defendant owed Plaintiff and the California Subclass a duty to disclose all the material facts concerning the Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Defect from Plaintiff and the California Subclass, and/or they made representations that were rendered misleading because they were contradicted by withheld facts.

128.   Plaintiff and the California Subclass suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

129.   Defendant's violations present a continuing risk to Plaintiff and the California Subclass, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

130.   Defendant was provided notice of the issues raised in this count and this Complaint by the complaints filed against them and complaints in online forums as referenced above.

131.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiff and the California Subclass seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against Defendant.

132.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiff sent a letter to Defendant, on April 5, 2022, notifying Defendant of their CLRA violations and affording them the opportunity to correct their business practices and rectify the harm is caused.  Plaintiff sent the CLRA notice via certified mail, return receipt requested, to FCA US, LLC's

principal place of business.  This notice letter is attached to this Complaint as Exhibit B.

Should Defendant fail to correct its business practices or provide the relief requested

within 30 days Plaintiff will amend this Complaint to seek monetary damages under

CLRA.

133.    Plaintiff's CLRA venue declaration is attached to this Complaint as Exhibit

C, in accordance with Cal. Civ. Code § 1780(d).

## COUNT VIII

### Negligence
### (On Behalf of the Nationwide Class)

134.    Plaintiff repeats, realleges, and incorporates by reference the allegations

contained in paragraphs 1 through 49 as though fully stated herein.

135.    Defendant owed a duty to consumers to exercise a degree of care that a

reasonable person in the like position would exercise.  Defendant failed to do so.  Among

other things Defendant had a duty to follow industry custom and standards imposed by

federal regulations, to assess the foreseeability and likelihood of an injury, and to assess

the seriousness and frequency of the injuries threatened by the Class Vehicles.

136.    Defendant breached its duty to Plaintiff and the Class Members.  Among

other things, and without limiting the generality of the foregoing, Defendant failed to (1)

inspect its Class Vehicles adequately, (2) to design Class Vehicles properly, and (3) failed

to test its Class Vehicles adequately.

137.    Defendant's negligence was a substantial factor in causing Plaintiff and Class

Members to suffer economic, and potentially fatal harm as well as other damages to be

proven at the time of the trial.

138.    Plaintiff and Class Members were harmed because they were in fear and at

risk of immediate catastrophic injury to themselves and passengers of the Class Vehicles,

and people and property surrounding the Class Vehicle.

139.    As a direct and legal result of the wrongful acts and omissions of Defendant,

Plaintiff and Class Members were harmed.

## COUNT IX

### Failure to Recall/Retrofit
### (On Behalf of the California Subclass)

140.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully stated herein.

141.   Plaintiff brings this count individually and on behalf of all members of the California Subclass.

142.   Defendant manufactured, marketed, distributed, sold or otherwise placed into the stream of commerce.

143.   Defendant knew or reasonably should have known that the Class Vehicles were dangerous when used in a reasonably foreseeable manner and posed an unreasonable safety risk.

144.   Defendant became aware that the Class Vehicles were dangerous when used in a reasonably foreseeable manner and posed an unreasonable risk after the Class Vehicles were sold.

145.   Defendant failed to recall the Class Vehicles in a timely manner.  In addition, Defendant's 2022 Recall was ineffective because it did not mitigate or otherwise resolve the Defect.

146.   A reasonable manufacturer in same or similar circumstances would have timely and properly recalled the Class Vehicles.

147.   Plaintiff and Class Members were harmed by Defendant's failure to recall the Class Vehicles properly and in a timely manner and, as a result, have suffered damages, including out-of-pocket costs, losses and inconvenience expended in complying with an inadequate recall, and caused by Defendant's ongoing failure to properly recall, retrofit and fully repair the Class Vehicles.

148.   Defendant's failure to timely recall the Class Vehicles was a substantial factor in causing the harm to Plaintiff and Class Members as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of the members of the Class, prays for relief as follows:

a. An order certifying the proposed Nationwide Class and California Subclass, designating Plaintiff as the named representative of the Nationwide Class and California Subclass and designating his attorneys as Class Counsel;

b. A declaration that FCA is financially responsible for adequately notifying all Class Members about the defective nature of the Class Vehicles;

c. An award to Plaintiff and the Class Members of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

d. For restitution of all money or property wrongfully obtained by FCA;

e. For disgorgement, for the benefit of the Class, all or part of the ill-gotten profits;

f. An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, or as otherwise allowed by law;

g. An award of pre-judgment and post-judgment interest, as provided by law;

h. Leave to amend the Complaint to conform to the evidence produced at trial; and

i. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by jury.

Dated: April 6, 2022

Respectfully submitted,

By:   /s/ *Gayle M. Blatt*
GAYLE M. BLATT
**CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA  92101
Telephone: (619) 238-1811
*dcasey@cglaw.com
gmb@cglaw.com
jrobinson@cglaw.com
camille@cglaw.com
mmorphew@cglaw.com*

*Attorneys for Plaintiff*